(80 South. 680)

COOK et al. v. ECHOLS et al.    (8 Div. 582.)

(Court of Appeals of Alabama.    Dec. 17, 1918.)

1. HABEAS CORPUS ☞113(12) — APPEAL — FAILURE TO TRAVERSE RETURN—WAIVER— TRIAL OF CASE ON MERITS.

Where respondents failed to urge that the return in habeas corpus must be taken as true because of absence of a traverse, and allowed a trial on the merits, they will be deemed to have waived formal traverse, and the case will be considered by appellate court on its merits.

2. ADOPTION ☞8 — PROCEEDINGS — OBSERVANCE OF STATUTORY REQUIREMENTS—ACKNOWLEDGMENT BEFORE JUDGE OF PROBATE.

A declaration of adoption not acknowledged before the probate judge of the county of declarant's residence as required by Code 1907, § 5202, renders the effort to adopt a child ineffectual.

3. HABEAS CORPUS ☞99(3)—CUSTODY OF CHILD—CONSIDERATIONS.

In determining whether custody of child shall be disturbed, the child's welfare is the primary consideration, though not always controlling, and where controversy is between parents and third parties, not blood relatives, the natural ties of affection and sympathy existing between parent and child cannot be ignored in determining what is for the child's best interests.

4. PARENT AND CHILD ☞3(1)—DUTY OF PARENT—SURRENDER OF CUSTODY OF CHILD.

A parent cannot, by surrendering child's custody, though with the intention that the surrender of custody be permanent, avoid the duty of providing for the child's well-being.

5. HABEAS CORPUS ☞99(4) — CUSTODY OF CHILDREN—RIGHTS OF PARENTS — POVERTY.

Where father, unable to care for child upon mother's commitment to an insane asylum, surrendered custody of child to third parties, who were not blood relatives, the court upon habeas corpus petition upon mother's recovery, should have awarded child to parents, where they were of good character and father was supporting family, though third parties were in better circumstances.

Appeal from Probate Court, Morgan County; L. P. Troup, Judge.

Habeas corpus by G. W. and Annie Cook against Joe Echols and Ida Echols to recover the custody of George Cook, an infant. From a decree denying the prayer of the petition the petitioners appeal. Reversed and rendered.

The response to the petition was: (1) That Cook had given the child to respondents. (2) That the respondent Joe Echols had adopted said child as required by law. (3) The Cooks are not suitable persons to have the care and custody of said child, and are not able to maintain and rear him. (4) The Cooks willfully abandoned said child, and such abandonment has continued for more than six months, and they have contributed nothing to the support and maintenance. (5) The said Cooks are not entitled to the possession of said child.

The trial proceeded on the petition and answer without further pleading, and there was evidence produced to support both.

Wert & Hutson, of Decatur, for appellants. Tennis Tidwell, of Albany, and W. T. Lowe, of Decatur, for appellees.

BROWN, P. J. [1] The respondents, without in any way raising the question that in the absence of a traverse the facts stated in the answer or return must be taken as true, allowed the court to proceed with the trial of the case on the merits, as though the facts stated in the return had been properly traversed and issue joined thereon. This course operated as a waiver of formal traverse, and the case will be considered here on the merits as presented by the proof. Montgomery v. Hughes, 4 Ala. App. 245, 58 South. 113; Stewart v. Smith, ante, p. 461, 78 South.

724, and cases cited; Tyson v. Decatur Land Co., 121 Ala. 414, 26 South. 507.

[2, 3] The effort of the respondents to adopt the child was abortive, because of a failure to observe the statutory requirement that the declaration of adoption must be acknowledged "before the judge of probate of the county of his (the declarant's) residence." Code 1907, § 5202; Prince v. Prince, 188 Ala. 559, 66 South. 27. Moreover, the proceedings authorized by the statute being purely ex parte, it is a question of serious doubt whether such a proceeding would constitute an obstacle in the way of any court of competent jurisdiction in dealing with the subject of the child's custody so as to conserve its best interest, if strict compliance with the statute had been shown. Murphree v. Hanson et al., 197 Ala. 246, 72 South. 437. While the welfare of the child is the primary consideration, "though not always controlling, in determining whether the custody assailed shall be disturbed" (Harrist v. Harrist, 151 Ala. 659, 43 South. 963), where the controversy is between the parents on one side and third parties not related by ties of blood on the other, as here, the natural ties of affection and sympathy existing between parent and child are a consideration that cannot be ignored in determining what is for the best interest of the child. We take the following from the opinion of the Court of Appeals, speaking by Simpson, J.:

"The laws of nature teach us that the relation of parent and child is sacred, that the welfare of the child is conserved by the cultivation and promotion of that affection which should exist between parent and child, and that as a general proposition no one can watch over the growth and development of the child as a loving father or mother can and will. Consequently it is recognized that, other things being equal, the parent is not only under the sacred duty of providing and caring for his child, but that, in correlation of that duty, the parent is entitled to the care and custody of his child, unless some good cause is shown why he should not have such care and custody, not merely as a matter of right, but because the law presumes that the best interests of the child are thereby subserved." Montgomery v. Hughes, supra.

The controversy here is between the father and mother as petitioners, on the one side, and the appellees, who are not in any way related to the child, on the other. The evidence shows that during the affliction of the mother with a mental derangement to such an extent that she was committed to the insane hospital for treatment, the father, not being able to properly care for the child, which was then a baby only 6 months old, committed it to the custody of appellees, who retained its custody without question until a short time before the petition in this case was filed, and have cared for it as their own covering a period of about 12 months—a neighborly charity and sympathy that is commendable. A short time before the petition was filed, the mother, having fully recovered, returned to her family, and demanded the custody of her child, and the evidence shows that the petitioners, accompanied the demand with an offer to pay the respondents for their trouble and expense in caring for the child during the time it had been in their custody, but they refused to accept this offer or to restore the child to petitioners, and this proceeding is the result.

The only material difference in the condition in life of the parties, as shown by the evidence, is that the respondents have been more fortunate in accumulating, and own their own home, while the petitioners lived in a one-room cabin situated on the Hartselle Pike, in which they have two beds and other belongings such as are essential to their condition in life, the family consisting of the petitioners, one little girl, and the child in question. The evidence shows that the petitioners sustain a good character, that the father is a good worker, and has in the past supported his family suitable to their station in life.

[4] While it is shown that the father of the child voluntarily placed the infant in the custody of the respondents, it is also shown that because of the affliction of his wife, and his situation after she was committed to the asylum, there was little else he could do, and that in so doing he acted for the best interest of the child. There is some conflict in the evidence as to whether this surrender of the child's custody by the father was intended to be permanent, but whether it was or not the law will not permit him to thus avoid the duty resting upon him to provide for its well-being. Montgomery v. Hughes, supra.

[5] No case has been called to our attention, and after diligent search we have not been able to find one, where the parents were denied the custody and care of their child on the sole ground that they were poor and were compelled to earn their bread by the sweat of their brow, or because some other person was more fortunately situated and better able to supply the necessities and comforts of life to such child. The history of this country is rich with traditions of humble homes that have produced men and women who have lived to honor their country and bless the generation in which they have lived; and, after careful consideration of the evidence in this case, we do not think that the difference in the situation of the parties shown by the evidence justified the trial court in denying the prayer of the petition, and the judgment appealed from will be reversed, and one here rendered awarding the custody of the child to the petitioners.

Reversed and rendered.