## Ferguson v. Klein et ux.

(Decided Jan. 11, 1938.)

474

BENTON, BENTON, SMITH & LUEDEKE for appellant.

CHARLES E. LESTER, JR., JOHN WM. HEUVER, and BARBOUR & BASSMANN for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

William S. Ferguson appeals from a judgment denying him the custody of his daughter, Mary Elizabeth, then about five years of age.

The undisputed facts may be summarized as follows: Mary Elizabeth was born on January 22, 1931, and her mother died a few minutes after her birth. Appellant was unable at that time to look after her properly, and on May 3, 1931, placed her in the care of Florence Klein and her husband, William E. Klein, whom he met through a cousin, and who showed an interest in the child. Under the arrangement with the Kleins, appellant was to contribute $5 a month to pay for the baby's milk. He paid for eight months, and also furnished a case of prepared baby food. On June 17, 1933, appellant married Miss Thoennes, a friend of his former wife, and who, like her, was a graduate of the University of Cincinnati and a teacher in the public schools of that city. Before and after their marriage the Fergusons visited Mary Elizabeth at the Klein home, and also took her to their home for an occasional visit.

This action to recover possession of the child was brought on October 17, 1935. The Kleins defended on the ground that Ferguson was not a suitable person to have the custody of his daughter, and the further ground that he had entered into a contract by which he

agreed that he would never take the child from them, which agreement the chancellor upheld.

The Kleins lived in Fort Thomas, and he owns a home which is mortgaged, and the balance due thereon is $7,198.40. He has an income of more than $4,000 a year. On the other hand, the Fergusons live in Cincinnati, and Mrs. Ferguson owns a home upon which there is no mortgage, and receives a salary of $2,500 a year. Mr. Ferguson has never been a very successful businessman, but is now making a small amount. There is nothing in the record suggesting that either the Kleins or the Fergusons are not suitable persons to have possession of the child.

It must not be overlooked that the contest is not between the father and the mother, or between the father and other near relatives, but between the father and total strangers. Under our statute, the surviving parent, if suited to the trust, is entitled to the custody of an infant child, section 2016, Kentucky Statutes, and, where he is able to secure the child from want and positive distress, its custody will not be awarded to a total stranger because of any supposed advantages that might accrue to the child. Stapleton v. Poynter, 111 Ky. 264, 62 S. W. 730, 23 Ky. Law Rep. 76, 53 L. R. A. 784, 98 Am. St. Rep. 411. It is apparent, therefore, that the right of the Kleins to retain the custody of the child depends solely on whether there was an agreement to that effect, and such an agreement was valid. There are cases in this court calling in question the validity of such agreements, but in the recent case of Thompson v. Childers, 231 Ky. 179, 21 S. W. (2d) 247, all the cases were reviewed and the conclusion reached that such an agreement was not void as against public policy, and that the right of custody might be waived by the surviving parent. However, we are not inclined to uphold such agreements where the meaning of the language employed is not unequivocal, or the evidence not clear and convincing, or the act of relinquishment is performed under circumstances of temporary distress or discouragement. 46 C. J. 1233. According to the Kleins, it was first understood that they should keep the child only two months, but the matter dragged along for several months thereafter, and they insisted on having a definite agreement about the future custody of the child. For the purpose of adjusting the matter, appellant came to the Klein home on January 13, 1933.

According to Mrs. Klein, she asked appellant on that date if he would let them adopt the child. He replied, "I will never let anyone adopt her." She then told appellant that some agreement had to be reached, and said, "You will have to make another arrangement." While on the stand she admitted writing a letter, after she heard of his marriage, in which she said:

> "It is hard to hear things from strangers, so if it is true, won't you please tell me and let me know just where I stand about the baby and what I may expect?"

Mr. Klein, who was in the basement of his home at the time of the alleged conversation between Mrs. Klein and appellant, testified in substance as follows: His wife said, "Mr. Ferguson, I sent for you for one reason, that is, I can not go along any longer with the way we are with this baby, now you either got to do one or two things, I don't propose to go along for three or four more years and then you bob up and get married and come back and want the baby, I can not stand it any longer." She said, "You either got to give me this baby or take it out." His exact words were, "Mrs. Klein, I never could give you that baby, but if you should care for that baby in the future as you have in the past, I will never take that baby from you, you can have that baby as long as you want it." His wife's words were: "That being the case I always want that baby." On cross-examination Mr. Klein stated that appellant said, "He never could give that baby up." He also admitted that appellant said to Mrs. Klein, "I never could give you that baby." Betty Jane Klein, the daughter of appellees, who was present in the adjoining room at the time of the conversation, testified that her mother told Mr. Ferguson that something would have to be done about the baby—either he would have to be content to leave her with them, or he would have to take her then. Appellant replied, "Mrs. Klein, as long as you continue to care for the baby as you have in the past, I will never take her from you as long as you want to keep her," and her mother said, "That will be always, Mr. Ferguson." As Mr. Ferguson was leaving he said to her mother, "You need not worry, Mrs. Klein, I will never take the baby from you."

On cross-examination she testified that, after appellant had said he would never take the baby from

them, he added, "I could never let you adopt her." On the other hand, appellant denied agreeing to let the Kleins keep the baby. Considering only the evidence given by the Kleins, we have on the one hand his statement that he would let the Kleins have the baby as long as they wanted her, and on the other hand the statements that he could never let anybody adopt the child and never intended to give her up. It is at once apparent that there is such inconsistency between these statements that it hardly can be said that the language employed is unequivocal, or that the evidence is clear and convincing. Indeed, the subsequent conduct of Mrs. Klein in writing to appellant and asking where she stood in regard to the baby rather confirms the view that she did not regard any prior statements of appellant as giving her the right to keep the child. In addition to all this, it is the rule that the circumstances under which a parent surrenders the custody of his child must be taken into consideration. Thus in Haglund v. Egge, 41 S. D. 433, 171 N. W. 212, 213, the court, in awarding the father the custody of his child, said:

> "The provisions of the contract are somewhat vague in this respect. We are of the view that this contract should have but little weight, and should not be a controlling factor when considered in connection with all the surrounding circumstances. This was appellant's first child. Appellant and his first wife were then quite young. When the wife and mother died, it was impossible for appellant to personally care for this child."

In Winter v. Winter, 184 Iowa 85, 166 N. W. 274, the mother died as the child was born, and the father surrendered her to his wife's sister. The court awarded the custody to the father. In the course of the opinion it was said:

> "In such a contest, the father, as the only surviving parent, starts with a very strong presumption in his favor. The fact that his situation was not suitable to take the earlier care of the newborn, and that he had to surrender it to tenderer hands than his own, is not conclusive against him. The best of fathers could be thus situated."

In Cook v. Echols, 16 Ala. App. 606, 80 So. 680, 681, the child was six months old when the mother was

committed to an asylum, and the father turned the child over to strangers. In upholding his right to the child, the court said:

> "While it is shown that the father of the child voluntarily placed the infant in the custody of the respondents, it is also shown that because of the affliction of his wife, and his situation after she was committed to the asylum, there was little else he could do, and that in so doing he acted for the best interest of the child."

In the case under consideration appellant first surrendered the child shortly after her mother's death, and was to pay the Kleins $5 a month. Later on the Kleins insisted on having a definite agreement as to the future custody of the child. At that time he was still unmarried, and in no position to take charge of and care for the child. Considering the agreement in the light of the language employed, and the circumstances under which it was made, we are not inclined to hold it sufficient to deprive appellant of the custody of the child. It follows that the child should have been given to appellant.

Judgment reversed and cause remanded, with directions to enter judgment in conformity with this opinion.