## Turner v. Lee et al.

Sept. 29, 1942.

396

W. A. Middleton for appellant.

J. Brandon Price for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

This case involves the question of the custody of an infant girl who was not quite two and one-half years of age at the time of the institution of this habeas corpus proceeding in June, 1941. This represents the third unsuccessful attempt on the part of Thomas Turner to obtain the custody of his daughter through habeas corpus proceedings. We are impressed with the fair manner in which the trial judge considered Turner's application for a writ of habeas corpus, and we are not unmindful of the painstaking and conscientious manner in which this trial judge considers questions brought before him; but, after a careful consideration and reconsideration of the record, we are convinced that it was error to refuse Turner the custody of his infant daughter.

There is such sharp conflict in the evidence as to the arrangement under which Turner left the child with the appellees when she was only two days old, and at the time of the death of her mother, that it becomes necessary for us to review briefly the circumstances attending the arrangement.

Mrs. Lee, a cousin of Turner's, said that Turner gave her the child after the mother died and he said at that time and on later occasions that he would not take

her away. She offered the testimony of two or three witnesses to the same general effect. One witness, who lived in the vicinity of the Lees, testified that Turner came to him for employment, a few months after the death of his wife, saying that he wanted to be near his child, and that during the conversation he said that he had given her to Mrs. Lee. Turner testified that he did not give his child to Mrs. Lee and that he had never said that he had given her away. He said that he left the child with her under an arrangement whereby he was to pay $10 a month for her keep, in addition to furnishing her clothing and other necessaries. He said that he paid the $10 a month for about 10 months, and the appellees admitted receiving those amounts, but the testimony is conflicting as to the amount of money Turner sent for clothes and incidentals.

On January 1, 1940, after the child had been with the appellees for some 9 months, Turner returned from Detroit, where he was employed in a factory, and attempted to get his child. The Lees did not want to give her up and Turner said that he agreed to leave her with them for another year under an arrangement whereby he was to pay $5 a month for her care and in addition was to furnish clothing and incidentals. The Lees admitted receiving $60 during the second year the child was with them, but again the proof is conflicting as to the amount of clothing and other necessaries furnished by him. As indicated, the appellees admit receiving $160 from Turner, but they say that represented only a contribution from Turner for the support of his child and that it was not received under an arrangement whereby they were merely given her temporary custody. Certain receipts signed by Mrs. Lee and offered by Turner in evidence show that the amounts were for the baby's board and keep. Turner returned at the end of the second year and attempted to get his child. Upon the Lees' refusing to give her up, he made his first application for a writ of habeas corpus. His second attempt to get the child through that channel was made in March, 1941. The feeling between the Turners and the Lees became so strained just prior to the institution of this proceeding that he was placed under a peace bond.

We may say at this point that we are convinced from the record that no question can be raised as to the fitness of Turner or the appellees to act as custodian of

the child.  The Lees appear to be people of moderate circumstances, but they enjoy enviable reputations in their community.  At the time this record was made up Turner was employed in a factory in Detroit at $6 a day. He was living with an uncle in the vicinity of Detroit. This uncle testified that Turner was a man of good character and good habits; that he had made his home with him off and on for five or six years; and that he and his wife had agreed with Turner that he could bring the baby to their home and that they would keep her for him.  We are convinced from the record that this uncle of Turner's maintains a good home and that the child would be well provided for there.

The case of Thompson v. Childers, 231 Ky. 179, 21 S. W. (2d) 247, settled the question in this jurisdiction as to the validity of an agreement under which a parent may surrender the custody of his child.  It was pointed out, however, in the case of Ferguson v. Klein, 273 Ky. 473, 116 S. W. (2d) 950, that this Court is not inclined to uphold such agreements where the meaning of the language employed is not unequivocal and the evidence as to the existence of the agreement is not clear and convincing, or where the act of relinquishment is performed under acts of temporary distress or discouragement.  Certainly it can not be contended that Turner was not under great distress at the time he placed his child in the custody of the Lees.  His wife had just died, and, indeed, had not been buried, at the time Mrs. Lee took the child. Obviously, Turner knew of the great difficulty which he would encounter in caring for the newborn child.  It could well be said that he should be commended rather than condemned for surrendering the child into the hands of one more suitable to care for her at that time.

It can be noted from the foregoing versions of the evidence as to the existence of an agreement as contended for by the Lees that there is an absence of unequivocal language, and also an absence of clear and convincing proof that such an agreement was actually made.  We are impressed with the fact that Turner made substantial contributions for the support of his child during the first two years she was with the Lees, as well as the fact that he made two peaceable attempts to get them to give her to him.  It may be said at this point that there was testimony to support that of Turner that, when he asked for the child at the beginning of 1940, he told the Lees

that he would leave her with them for a second year and would pay them $5 a month for her care.

It was pointed out in the case of Bridges v. Matthews, 276 Ky. 59, 122 S. W. (2d) 1021, that this Court has rarely given the custody of a child to a grandparent or a stranger in preference to a parent; but in the Bridges case, as in others referred to therein, there have been instances where such has been done. A review of those cases will show, in the main, the existence of either a clear and unequivocal agreement under which the custody of the child was surrendered or conditions where a child of tender years was left with a relative, usually a grandparent, for some considerable time before an effort was made to regain its custody.

In the case of Ferguson v. Klein, supra, there was an alleged agreement on the part of Ferguson under which a child some four months of age was placed in the hands of the Kleins and whereunder he was to contribute $5 a month for the baby's milk bill. The child remained in the possession of the Kleins some four years before Ferguson sought to regain her custody. There was conflicting proof as to the arrangement under which the child was left and also proof for the Kleins that Ferguson had said that, while he would not permit them to adopt the baby, he would never take her away from them. Ferguson contended that he said that he would never let anyone adopt the baby and that he never intended to give her up. There was also proof that Mrs. Klein had written Ferguson asking him where she stood in regard to the custody of the child after there had been some discussions between them about the matter. The lower court gave the custody of the child to the Kleins and this Court reversed that judgment, directing that she be turned over to her father. It strikes us that that case was a stronger one in favor of those claiming the child as against the father than the one at bar. When we consider the proof as to the alleged agreement in the case under consideration and the circumstances under which Turner surrendered his child to the Lees, we can not escape the conclusion heretofore indicated that Turner is entitled to the custody of his child.

Wherefore, the judgment is reversed with directions that it be set aside and for the entry of a judgment in conformity with this opinion.