EBLEN, J., joins in this dissent.

**Jo Marie Rhoten RIGGLE, Appellant,**

v.

**Mr. and Mrs. Lolo RHOTEN, Appellees.**

Court of Appeals of Kentucky.

Dec. 12, 1958.

Rehearing Denied Jan. 30, 1959.

Wilson & Nunn, Glasgow, for appellant.

Paul Carter, Abe P. Carter, Tompkinsville, for appellees.

MOREMEN, Chief Justice.

Appellant, Jo Marie Rhoten Riggle, sought by habeas corpus proceedings in the Monroe Circuit Court to obtain physical custody of her four year old child, James Rhoten, Jr., from his paternal grandparents, Mr. and Mrs. Lolo Rhoten, appellees. The circuit court heard evidence, awarded custody of the child to the grandparents, and dismissed the petition for a writ.

In the year 1954, when appellant was eighteen years old, she married James Rhoten, who was nineteen years of age. They lived in South Bend, Indiana, until the time of their separation in June of 1957. On the 25th day of September, 1957, appellant was granted a divorce by the probate court of St. Joseph County, Indiana, and was awarded custody of the child, James Rhoten, Jr. James Rhoten, Sr., was ordered to pay the sum of $10 per week for support of the child.

After the divorce, appellant was earning $25 a week and was receiving $10 a week under the judgment of the court. Appellant was obligated to make payments on a house and car and was dependent on others to take care of the child while she worked.

After a conference, appellant and her former husband decided to take the child to the paternal grandparents who lived on a small farm in Monroe County. Appellant wrote to appellees about taking the child. There is some controversy as to the agreement reached by the parties. However, appellees produced a copy of the purported letter which reads:

"Dear Lolo,

"Just a few lines to say hello and that we're all Ok all but colds. I am writing this letter to you to find out if you want to keep Jimmie. James and I have talked it over and we both think it would be better if Jimmie were down there with you. I know I would rather have him with you as with James and myself, because we can't go like we have been and keep our minds. I don't want James to have him and he doesn't want me to have him so I think it would be better if you had this poor little thing.

"And I told James I would let him go if I could see him any time I wanted to so if you want him we will bring him down there a week from this Friday but if I can't see him any time I want I won't tell him so you write and let me know so please write and let me know soon. Tell everyone hello.

"Lots of love.
"Jo Marie."

In response to the letter, the grandparents wrote and said they would take the child and in about a week appellant brought the child to them. The grandparents understood that he was theirs to rear and keep. Appellant contends that she did not surrender the child permanently.

About thirty-seven days after the child was delivered to the grandparents, an attorney of South Bend, Indiana, wrote to

appellees and advised them that the mother was now able to take care of the child and she wanted him returned to South Bend at her expense. The child was not surrendered to the mother. Then followed a long period in which the mother visited the home of appellees in order to see her child. Often these trips were made with her ex-husband. During the following year she made the one thousand mile trip fifteen to twenty times.

In August of 1958, appellant remarried. She is still living in South Bend, Indiana, and is no longer required to work. Her husband, who operates a filling station, has an adequate income. She testified that she and her husband were anxious to take the child into their home, rear and educate him.

The trial court in denying the writ of habeas corpus based his opinion upon the ground that appellees, the Rhotens, are members of a good and highly respected family in the community and would furnish the young child a good home. He was also of opinion that the mother, by her letter and other means, had relinquished her right under the divorce judgment to the permanent custody of the child, and further found that she was at this time not "suited to the trust" of rearing the child.

The latter finding was based upon an accusation by appellant's former husband that after the divorce during various trips which he made with her to visit the child she had had sexual relations with him. He also testified that after the divorce, appellant had lived with a man whose first name was Robbie, for a period of six or seven months. When cross-examined about this matter, he said, "Well, I couldn't prove it, but I know he stays there and everybody else up there that knowed her knows he stayed there." There was also some proof given by the grandfather and by appellant's ex-husband that at times she did not care for the child in the best manner.

We pointed out in Ferguson v. Klein, 273 Ky. 473, 116 S.W.2d 950, 951, and re-affirmed the rule in Estridge v. Taylor, 310 Ky. 684, 221 S.W.2d 644, that this court is not inclined to uphold agreements, such as we have here, where the meaning of the language employed is not unequivocal and the evidence as to the existence of the agreement is not clear and convincing, or where the act of relinquishment is performed during a period of temporary distress or discouragement.

In the case at bar, we do not find the letter plain and unequivocal, nor do we believe the evidence produced shows conclusively that it was appellant's intention to surrender custody of her child permanently. The record shows that her income was not sufficient to meet her obligations. It was necessary for her to work. She was dependent on others to care for her child. It was, indeed, a period of distress. She almost immediately sought to regain his physical custody and during the period of separation she visited the child a great number of times when one considers the distance of the journey. This fact, in itself, distinguishes this case from those where a mother surrenders her child and then abandons it for a long period.

The most difficult feature of the case stems from the court's finding that appellant was not a proper person at this time to have custody of the child. This court is reluctant to accept the uncorroborated testimony of a single witness in matters of this nature, and the legislature has required a high order of proof when lewdness or adultery is charged in cases involving the marital relation. KRS 403.030. Here, the ex-husband is the only witness. On the other hand, the mother did not take the stand and deny his charges. Appellant did testify that since her marriage in August 1958, she has had an adequate home and there is no testimony that she is not now living a moral life.

The evidence offered in this case is very sketchy. The husband's accusa-

tions were uncorroborated and appellant made no attempt by positive proof to describe her present situation or the home to which the child would be brought if awarded to her. The natural right of the mother to have custody of a child of tender years when she is a proper person is undenied. However, due to the undeveloped state of the facts, we have concluded that we will not disturb the findings of the chancellor.

The door, however, is not forever closed and we believe that if both parties at a hearing in the future should make a full disclosure of all the facts, a result might be obtained that would be more satisfactory than the one which we now have, because the court could act with more assurance.

Judgment affirmed.