## Acker, et al. v. Henry Clay Oil Company, et al.

(Decided November 17, 1922.)

## Appeal from Powell Circuit Court.

1. Trusts—Acceptance of Deed Without Consent of Persons Paying Consideration.—Where a vendee takes a deed in his own name, without the consent of the person paying the consideration or, in violation of some trust, purchases the land deeded with the effects of another, a trust will result. But such a trust will not be held to exist on either of the grounds mentioned, unless the evidence in support of it is clear and convincing.

2. Mines and Minerals—Infants—Action for Authority to Lease—Estoppel.—One claiming the equitable title to minerals in land, who causes a suit to be instituted on behalf of her infant children for authority to lease the mineral rights, is estopped from denying the rights acquired at a sale of the minerals made pursuant to a judgment rendered in the proceeding so instituted.

3. Mines and Minerals—Lease of Equitable Title.—Where the claimant of the equitable title to minerals leases them to another, the lessee therein acquires no greater interest than was possessed by his grantor at the time the lease was executed; and the equitable title being adjudged against the lessor, no interest whatever passes to the lessee.

CHARLES W. FRIEND, ROBERT R. FRIEND and MORRIS & JONES for appellants.

C. F. SPENCER for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

The plaintiffs below filed this suit in the Powell circuit court against the Henry Clay Oil Company, Zack T. Conner, and the three infant children of the plaintiff, Loudica Sparks, by her first husband, Melvin Townsend, to quiet title to a tract of about sixty acres of land on the headwaters of the south fork of Red river in Powell county. Loudica Sparks and J. B. Sparks, her husband, asserted title to the fee, and T. B. Acker and S. E. Acker, lessees of the alleged freeholders, made claim to the mineral rights under a lease of January 31, 1916.

By answer defendants put in issue Loudica and J. B. Sparks' claim of title, asserted title in the three infant children of Loudica Sparks by her former husband, and, on behalf of the Henry Clay Oil Company and Zack T. Conner, pleaded the proceedings and judgment of the circuit court of Powell county, in which the oil rights to

the land in controversy were leased at the instance of Loudica Sparks, as estopping her and her husband from asserting any claim or interest adverse thereto. The affirmative matter of the answer was traversed, and, on the proof taken, the trial court rendered judgment, denying the relief sought and dismissing the petition. From that judgment this appeal is prosecuted.

Several years ago, Melvin Townsend died intestate, a resident of Powell county, leaving surviving him his widow, Loudica Townsend, now Loudica Sparks, and the three infant defendants. At the time of his death he with his family resided on the tract of land in dispute. After his death his widow and the three children continued to reside on the land, and they now reside there with the widow's second husband, J. B. Sparks. This litigation involves the title to that land, the written evidence of which consists of a contract of sale made by Isaac Mullens and his wife on November 5, 1893, to Ira Wells, assigned on February 20, 1895, by Ira Wells and his wife to William F. Baker, and on May 6, 1898, assigned by William F. Baker and his wife to Melvin Townsend. Loudica Sparks' contention is that she owned a small tract of land that was traded for the land in controversy, and that Melvin Townsend, her then husband, without her consent, took the assignment of May 6, 1898, to himself, when he should have taken it to her; and that his act in so taking the assignment vested the equitable title in her. J. T. Acker and S. E. Acker are, as noted, claiming under a lease from Loudica Sparks.

The claim of equitable title in Loudica Sparks, the establishment of which is essential to appellants' cause of action, rests on the utterances of this court in cases where the subject of resulting trusts was under consideration. And, without discussing the authorities cited, it may be admitted that notwithstanding section 2353 of Kentucky Statutes, it is the rule that where the vendee (1) takes the deed in his own name without the consent of the person paying the consideration, or (2) where the grantee, in violation of some trust, purchases the land deeded with the effects of another, a trust will result. Roche v. Roche, 188 Ky. 327. It has been uniformly held that proof of either of the conditions stated, if there be no intervening innocent claimants, is sufficient to establish the trust. But it is moreover true that the one attempting to prove the trust, in order to succeed, is obliged to make out his case by evidence that is clear

and convincing. These principles must be applied to the evidence in determining the merits of the claims advanced by appellants. And, in that connection, it is to be remembered that J. T. Acker and S. E. Acker can, in no event, have title to the minerals, unless the evidence shows that Loudica Sparks on January 31, 1916, was the holder of the legal or equitable title to the land. That she was not the holder of the legal title is admitted. But she claims the equitable title on the ground that, in the division of her mother's estate, there was a bond given to the three children by her mother under which she received the land traded by her husband for the land in controversy. The bond, however, was not offered in evidence, and its contents were not shown. Nor was it shown that the bond ran in her name, or was ever in her possession, or in fact that she had ever seen it. Neither is there in the record any paper of any kind showing that the land that she claims to have received from her mother was ever conveyed to William Baker. It is true that Reubin Townsend, the father of her former husband, said that Melvin Townsend traded the land that his wife received from her mother's estate for the Baker land, but he had never seen any deed or title bond to Loudica Sparks, nor any deed to Baker, and necessarily he did not know anything about the paper title to either tract of land. His testimony was based on information that he said was obtained from his son, and on what he had heard in the neighborhood. It is wholly undependable, being nothing but what he had heard; and one who seeks to prove title in himself, or to prove a trust resulting from the acts of another, cannot sustain the burden of his claim by hearsay evidence or by proof of rumors. In cases of that kind the courts wisely require that the evidence be clear and convincing, and manifestly the testimony of Reuben Townsend does not conform to that test. Nor is appellants' case made out by the testimony of Loudica Sparks. Her testimony as to the consideration passing to Baker for the land acquired from him is extremely indefinite. Furthermore, it is in evidence that, about the time the Baker land was acquired, Melvin Townsend sold a small tract of land that he owned, and there is nothing in the record to refute the conceivable fact that the proceeds from the sale of that land were used in the purchase of the Baker land. The only dependable evidence in the record is the assignment of May 6, 1898, which, on its face, shows Melvin Townsend to have been the pur-

chaser of the land. With that assignment in the record, and in view of the deficiencies in appellants' proof, we do not feel justified in holding that the evidence clearly and convincingly shows that Melvin Townsend purchased the land with the funds of Loudica Sparks and took the title bond in his own name without her consent. The contrary conclusion must be drawn from the evidence as a whole, and from that point of view it follows that the judgment must be affirmed.

There is another reason for the affirmance of the judgment as to Loudica Sparks. It is, that in March, 1917, she procured the appointment of a guardian for her infant children, with the view of instituting suit in the Powell circuit court for authority to lease the oil rights in the land in controversy. The authority sought was obtained in that proceeding, and appellee, Conner, became the purchaser of the lease for $500.00, agreeing as an additional consideration to pay to the owners of the land one-eighth of the oil produced. The Henry Clay Oil Company is now the holder of the lease purchased by Conner. Loudica Sparks, having caused that action to be instituted for the purpose of effecting a lease of the oil rights, is manifestly estopped to deny the rights acquired under the judgment in that case. That she was not a formal party to that suit does not affect the question, and, indeed, the fact that she was not made a formal party only raises an additional barrier to the claim that she is now making, for it indicates that she then realized that she had no interest in the land. So, on this ground, as well as the first mentioned, the judgment as between Loudica Sparks and the Henry Clay Oil Company and its grantor is correct.

That J. T. and S. E. Acker could acquire from their grantor no greater interest than she possessed is indisputable. The necessary sequence is they took nothing under the lease of Janury 31, 1916; but we may add that they were not deceived in their dealing with Loudica Sparks, for they, through their agent, when the lease of January 30, 1916, was taken, knew that Loudica Sparks possessed no paper title to or evidence of ownership of the land. When that lease was taken, the agent of the Ackers called on Loudica Sparks for the evidences of her title, and she produced the title bond that had been assigned to her former husband by William Baker. This was notice to J. T. and S. E. Acker of her inability to execute a lease, and similarly of the futility of taking one

from her, unless, of course, it could be shown that she held the equitable title. They assumed the risk of failing to establish that claim. That contingency having arisen, the probability of which they must be deemed to have anticipated, they certainly cannot now be indulged in the complaint that they were misled or deceived as to Loudica Sparks' title. We need not refer to the former lease further than to say that both parties thereto considered it as having terminated, and the preponderance of the evidence shows that it had lapsed on account of the failure of the lessees to perform the conditions therein stipulated.

Nor do we consider the recordation of the two leases as constituting notice to the appellees of the claim of J. T. and S. E. Acker. A conclusive answer to the suggestion is that the lease of May 21, 1913, lapsed before the institution of the action of March 3, 1917, and the grantors in the lease of January 31, 1916, had no power to convey the mineral rights attempted to be conveyed.

These considerations seem to us sufficient to dispose of appellants' contentions. The evidence and the law, in our opinion, sustain the judgment of the lower court, which is affirmed.