### Chance, et al. v. Pigneguy, et al.

(Decided January 15, 1926.)

Appeal from Kenton Circuit Court
(Criminal, Common Law and Equity Division).

1. Parent and Child—Parents of Child Primarily Entitled to Joint Custody when Living Together.—Parents of a child are primarily entitled to its joint custody when they are living together, of which they will be dperived only when it is clearly shown to be for good of infant.

2. Parent and Child—Relinquishment by Mother, while Single Woman, of Custody of Child Disregarded on Application by Parents for Joint Custody—Doubts Resolved in Favor of Natural Custodians.—On application by parents for joint custody of their child

a contract theretofore entered into by its mother while she was a single woman, relinquishing its custody to another, will be disregarded, if welfare of child seems to warrant it, and any doubt will be resolved in favor of natural custodians.

3. Parent and Child—Custody of Infant Placed Where its Real Future Welfare Demands.—Custody of infant will be placed where its real future welfare demands, which welfare is paramount to all other considerations.

4. Parent and Child—Custody of Child Awarded to Parents, Where its Welfare Seemed to Warrant it.—On application by parents for joint custody of a child, which mother, while a single woman, had relinquished to another, custody will be awarded to parents, where welfare of child seemed to warrant it.

5. Adoption—Ex Parte Judgment of Adoption Held Invalid.—Ex parte judgment of adoption held invalid in view of Ky. Stats., section 2072, where no consent of parent was given thereto.

LEWIS F. BROWN for appellants.

O. M. ROGERS for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

On the 26th of June, 1919, Stella Durr, an unmarried woman, gave birth to a female child at the Home of the Friendless in Cincinnati. The paternity of the infant was then unknown.

The mother remained at the institution until she was able to go to work, which she did; and there being at the institution a rule that a child remaining there longer than a year should be found a home and that its mother, under these circumstances, should not know where it had been placed, before the expiration of the year, the mother being unable to take and care for the child herself, and desiring it to have a home where she would have access to it, induced appellants, Chance and wife, to take it and care for it with the understanding she should, when able, be entitled to its custody. Subsequently, however, the mother still being unable to take and care for the child, entered into a formal written contract with appellants whereby she gave the child to them and relinquished her right to its custody. That was in 1921 and appellants retained the custody of and gave to the child the kindest care and attention at all times.

Prior to April, 1923, appellee Thomas Pigneguy, who had previously been married, was divorced from his wife, and during that month was married to the female appellee, Stella Durr, the mother of infant. There-.

after in July, 1923, appellants by an *ex parte* proceeding in the Kenton circuit court adopted the infant, Jeanett Durr, and were by the judgment awarded its custody.

After the marriage of Thomas and Stella, the former asserting that he was the father of the child although he was at the time married to a different woman, joined his wife in efforts to secure custody of the child through negotiations with appellants. The latter having become very much attached to the infant asserted their supposed rights under the written contract and the judgment of adoption, and declined to surrender its custody to them.

Thereafter this equitable action was brought by appellees wherein they assert the parenthood of the infant, and ask the court to give them its custody.

The evidence shows that appellants are poor renters, and have no property except some personal estate; that they are devoted to and have at all times been kind and good to the infant according to their ability; that the female defendant, upon whom necessarily devolved chiefly the care and training of the infant, was 59 years of age, and lived with her husband some miles from Covington on a rented farm; that in the locality of their residence there were only the customary country schools, and that their situation in life was such they could hope to give to the infant, if left with them, no greater advantages than the immediate neighborhood afforded.

On the other hand, the evidence discloses that appellee Thomas Pigneguy has a permanent occupation by which he makes $50.00 per week; that he and his wife live in the city of Covington, where the advantages for the infant, notwithstanding its parents' limited means, would necessarily be much greater than if its custody remained with appellants. The evidence likewise convincingly shows that the mother of the infant is an intelligent, fairly well educated and industrious woman; it shows that her conduct since the one mis-step has been exemplary, and that she has fully reinstated herself in the confidence and esteem of her friends; it shows that each of the appellees is devoted to the child, and will in all human probability exert themselves to the utmost, to not only educate her but to train and rear her in the paths of rectitude.

The parents of a child are primarily entitled to its joint custody when they are living together, and a chancellor will in such circumstances deprive them of such custody only where it is clearly shown to be for the good

of the infant. Likewise, upon an application by parents for the joint custody of their child, a contract theretofore entered into by its mother while she was a single woman relinquishing its control and custody to another will be disregarded by the chancellor if the welfare of the child seems to warrant it; and if there be doubt upon that score that doubt will be resolved in favor of the natural custodians. Without exception the chancellor will always, in the exercise of a sound discretion, place the custody of the infant where it is shown its real future welfare demands, the rule being that this is paramount to all other considerations. Bedford v. Hamilton, 153 Ky. 429; Vanover v. Johnson, 201 Ky. 320; Scott v. Kirkpatrick, 205 Ky. 700.

As to the *ex parte* judgment of adoption it is only necessary to say that under the provisions of section 2072, Ky. Stats., the court had authority to adjudge the parental control of the infant only by the consent of the parent or parents, and it is disclosed that no such consent was given.

The chancellor's judgment is in accord with these views, and it is affirmed.