## Skaggs et al. v. Gannon et al.

Jan. 26, 1943.

As Modified on Denial of Rehearing March 26, 1943.

J. J. Kavanagh and Chas. E. Keller for appellants.

Woodward, Dawson & Hobson for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

In adoption proceedings the Jefferson county court decreed the child of appellant mother to adopting parents, later overruling her plea to annul the judgment. On appeal to the circuit court the matter was referred to the commissioner, who made a comprehensive report giving findings of fact and conclusions of law, recommending that the judgment be upheld, the chancellor following his recommendation.

Appellant, mother of the illegitimate girl child, reared in a distant town in Kentucky, in a Christian family and moral atmosphere, had the benefits of high school education and a commercial course. When sixteen or

seventeen years old she went to Louisville to reside with a married sister, and began to make her own way in various honorable occupations. During 1939, while employed in a reputable restaurant, she was introduced to Mr. Howorth of St. Louis, a man forty years of age, whose business occasionally brought him to Louisville, this meeting resulting in a friendship. About four months after this she accompanied him to his room in a hotel and there engaged in intercourse, repeated a short time later. She became pregnant, and so informed a married sister who came to Louisville and remained with her until the birth of the baby January 5, 1941, at St. Anthony's Hospital.

Howorth, apprised of her condition, readily admitted that it was his act which brought it about. He and appellant testify that for seven months prior to the birth he contributed an appreciable weekly sum while she was unable to work; he came to the hospital at the time the child was born and paid all bills.

The proof is that prior to the time of knowledge of her condition appellant had never accepted any money, and that after she was able to work she declined contributions, and that there were no intimacies following knowledge of pregnancy. The mother remained in the hospital for ten days, and during that period the father insisted on taking the child, agreeing to adopt it. A sister in Huntington, West Virginia, was willing to take and care for the child, but the mother would not agree to either plan. While in the hospital appellant learned that Our Lady's Home for Infants might take the child, and concluded that this would be a satisfactory arrangement. The Matron and Director of Charities visited the hospital, when as appellant says, they explained her besetting difficulties, and drew a rather bleak picture of a prospective future for the child, suggesting possibility of adoption, to which she would not agree. The meeting ended with the agreement that it would be kept at the Home for two months, and the child was placed in its care.

When this time was up appellant went to the Home and took the child, intending to and did carry it to the home of the married sister. When they reached the home they found it under quarantine. She and a sister, with Howorth, made effort to find a temporary home, but were unable to do so, and returned the child to the or-

phanage; the management declined to accept it, due to the fact that, perhaps, the mother and child had entered the quarantined house. They made further futile effort, and shortly thereafter returned, stating the situation, and asking that the child be left there. It was then agreed, according to the Director's testimony that the child be left with the understanding that the orphanage place it in an adoptive home. The mother insists that she repelled the idea, and would not agree. The mother again left but returned the next day; similar colloquy ensued with the result, that upon the insistence of the Director the mother signed a ''Release of Custody and Consent to Adoption,'' which set out the fact that she was the mother of the child, giving its name and other data, and that she voluntarily agreed to surrender its custody, control, supervision, and further:

> ''I agree, subject to the provisions of Kentucky Statutes, Section 2072, to the adoption of said child by a person or persons approved by Our Lady's Home for Infants, Louisville, Kentucky, and hereby give express consent for the purpose of adoption proceedings. (This refers to persons having legal custody, and may mean father, surviving parent, mother or legal guardian.)''

The document appears to have been duly acknowledged; appellant insists that she did not swear to it, and the Director (a notary) was not sure whether oath was administered. He insists that she read it and was explained its purpose. Appellant insists that it was neither read nor explained, and that due to her condition of health and mental disturbance, that if explained or read, she did not understand its import.

It may be gathered from her proof and that of the Director, that she was assured that in case of proceedings to adopt, she was to be notified, and to such plan she says she would have objected; that her understanding was that the child was to remain until she became able, physically and financially to care for the child competently, and that it was expressly understood that she was not to interfere in any way, and as she understood ''not to even visit the child,'' and that she in no way violated this agreement; that she was not in a position to care for the child and that it was in good hands. The commissioner says she carried out her agreement.

Appellees, childless, had filed with the Home, application for adoption of a child. About March 17 they were informed that a child was available; they visited the Home, and agreed to take appellant's child; immediately made preparation for receiving it and on the 19th took her to their home. On November 13, 1941, they filed petition, seeking adoption of the child, naming the mother defendant, in which it was asserted that she had been absent from the State during the preceding four months, without knowledge on their part of her whereabouts (Civil Code of Practice, Sections 57, 58) and the court appointed warning order attorney who made his report on January 10, asserting that after a careful investigation no trace of appellant could be found, and that the father was unknown.

An officer of the Welfare Department (KRS 405.170) also reported, recommending adoption, but apparently accepting the statement of absence in affidavit, made no effort to locate the mother, though the statute requires someone to make "reasonable search," for a living parent during the sixty days' time allowed for investigation.

After the period mentioned, the court decreed the adoption. Within two weeks from judgment appellant filed in court a motion to be allowed examination of records, (KRS 405.210) accompanied by an affidavit, in part conforming to her motion filed a few days later, in which upon grounds stated, she prayed for a reopening of the case, and that the adoption decree be set aside. In this verified motion, which has all the attributes of a petition, in addition to facts already stated in part, she alleged that she was then physically and financially able to care for her daughter properly; that she never by written release or otherwise consented to adoption; that she had lived in Louisville, and was there during all times involved, and her address was known to the Home, and if any diligence had been used it could have been easily ascertained. She asserted her right under the law to notice, and opportunity to be heard personally. The appellee filed affidavit which set up facts with relation to care of the child, and their movements in the matter, concluding that the proceedings were in strict conformity to law.

The court refused to sustain her motion; within two weeks the mother appealed to the circuit court, where in April it was referred and reported as above stated,

and appellant filed detailed exceptions to the report. The matter was submitted to the chancellor, who directed counsel to file briefs on the question as to the right of appellant to revoke consent at this period of the proceeding, and its effect if so filed; whether or not in the county court there was effort to revoke, and whether his court had jurisdiction to allow filing, and consider revocation if filed, in view of Civil Code of Practice, Section 726, Ky. Stats., Supp. 1940, Sections 331b-1 to 331b-12, KRS 405.140 et seq., or is confined to the status existing at the time of the motion to annul in the county court.

The statute, supra (KRS 405.220), extends the right of appeal from an order of adoption within 60 days from entry. The Civil Code of Practice section, following the provisions of KRS 23.030, provides that the appeal "shall be tried anew, as if no judgment had been rendered." The court's suggestion apparently confused appellant. There she was contending no consent. However, prior to resubmission, she in person and by writing tendered, asserted that her pleadings in the county court constituted a revocation, and without waiving that effort, and insisting that she had never consented to adoption, revoked the alleged consent.

Upon submission the court rejected the tender, and in opinion reciting briefly the history and procedural steps, indicated that it was not necessary to decide whether or not under pertinent statutes appellant was a necessary party, since the mother entered her appearance and was heard by the county court on her contention that she had not given her consent. The order of the county court indicates a refusal to reopen the case. That the mother, in this instance, was a necessary party, seems to be admitted by counsel for appellee who does not insist otherwise. The question is controlled by Section 405.150, KRS, which provides that the child to be adopted, and if illegitimate, its mother, if living, and any guardian, testamentary or statutory, shall be made parties, and if there be no living parents and no guardian, then "the persons standing in loco parentis to the child" shall be party.

Here it is only contended by appellee that the method followed by the adoptive parents in bringing appellant before the county court was proper, and the only one available to them; and (2) the best interest of the

child requires that she be left with the adopting parents. (3) Appellant is estopped to withdraw consent after the rights of the adopting parents and the child have intervened.

Taking up No. 2, it may be noted that in our many cases dealing with the subject we have never failed to construe the law to be that the paramount duty of all courts to which the question comes, is to look to the welfare of the infant. The suitability of the mother, or her ability to care for the infant was not in issue at any time in the county court, which might have well been so had she appeared. Nor was there effort to ascertain her status, due, perhaps, to the conclusion that she had waived her rights and was before the court constructively. It was an issue in the circuit court, and the commissioner did not find her unsuitable or unable, but expressed the fear that "events occurring when she withdrew the child the first time may be repeated after a fashion." He was not certain from the evidence whether appellant intended to keep the child at home or relinquish it to Mr. Howorth; "either of these homes would be satisfactory, but I am afraid that if the child is not left with the Gannons her life will lack the stability of a conventional home."

There can be little doubt as we read the proof that the adopting parents are able to furnish a conventional home, with ability and a fervently expressed desire to keep the child. It is shown that they are good Christian, fair-minded people, which would justify the thought that if for the moment they believed there was any flaw in the process under which she came to them, they would not hesitate to lay aside their feelings of attachment and return the child to the mother, assuming that she be suitable to protect it. And it may be noted, aside from the false step taken by appellant, there is not a line against her character or reputation. The testimony (and lack of any to the contrary) evidences her good character, and removes any doubt of her sincere desire to have the child; her health is good; she is industrious, lives in a Christian home, and if we read the proof aright her financial ability is not far short of that of the adoptive father.

We are not to be concerned with the assertion that Mr. Howorth "stimulated this action," but if it be so, he was only further demonstrating, under extraordinary

circumstances, what may be denominated unusual and praiseworthy characteristics. As to his ability, as far as financial circumstances are concerned, he qualified fully. His wife testified and agreed that she would willingly accept the child into her home. It might be of interest to read French v. Catholic Community League, 69 Ohio App. 442, 44 N. E. 113.

Counsel contends that the mother is estopped to withdraw her consent to adoption after rights of the infant child and adopting parents have intervened. We may concede that this statement in a broad way manifests a sound rule of law, and would apply here were it clear to us that the mother had been deprived of her natural and legal rights in an unquestioned proceeding under an undisputed contract. Whether it would make a difference, it must be remembered that the child was in appellees' custody, under the adoption judgment, for less than a month when appeal was taken.

Conceding that appellees, all the way through, were in the best of faith, we cannot perceive the necessity for constructive service; it is no doubt true that they did not know that the mother was a resident of Louisville, with a known address and telephone listing. This was recorded at the Home and Hospital, but there was no divulgence, perhaps because of the written consent. Apparently there was little effort to ascertain the mother's whereabouts.

The fact that she was constructively before the court precludes us from saying the court was without jurisdiction, but the facts surrounding a failure of actual service have some influence, and this is not a collateral attack. Considering the provisions of Civil Code of Practice, Sections 414, 726, and Statutes, KRS 405.220 and 23.030, there can be little doubt as to the propriety of the procedure adopted by appellant.

Counsel for appellee raises the technical complaint that there was no appeal from the "adoption" judgment, but from that overruling the motion to reopen the case. Appellant's counsel was proceeding as if the judgment of adoption was invalid and, perhaps, had in mind the provisions of Civil Code of Practice, Section 763. Whether this was proper procedure or not, it is certain that the circuit court took jurisdiction of the appeal as

if from the adoption judgment, and tried the case de novo, without objection.

The Home is not here asserting any right under the alleged agreement. If it were, a reference to our own cases dealing with like agreements show that such, under certain circumstances, may be set aside. See Bedford v. Hamilton, 153 Ky. 429, 155 S. W. 1128, 1129; Chance v. Pigneguy, 212 Ky. 430, 279 S. W. 640; Thompson v. Childers, 231 Ky. 179, 21 S. W. (2d) 247; Stapleton v. Poynter, supra; Turner v. Lee, 291 Ky. 395, 164 S. W. (2d) 954, and Ferguson v. Klein, 273 Ky. 473, 116 S. W. (2d) 950, 951. In the Klein case we set aside a contract (based on consideration) because the relinquishment occurred under "temporary distress or discouragement." But here we have a different situation, since it is sought to set aside the order of adoption, the agreement for which was made under the circumstances above indicated, and between parties who, in the instance, could not be said to have been at the time dealing at arms length; the circumstances created a confidential relationship, and it must be conceded that appellant did not have any conception of the meaning or effect of the language "subject to the provisions of the Kentucky Statutes, Section 2072." Even had she known its meaning there may be doubt as to the authority of the Home involved here to have perfected or legally consented to the adoption, due to the language of that section, unless it be held that the agreement placed the Home in the status of loco parentis. It is to be noted that Section 2072, Ky. Stats., was repealed and reenacted by an act, now embraced in Chapter 405, KRS.

Appellant's rights depend on the question as to whether the consent contract was binding upon her, to be discussed with an elimination of any charge of fraud. It is not whether the adoption was or is void, but whether it is voidable, if there was not a fair understanding or meeting of the minds as to the effect of the agreement. If such conclusion is reached, then it would follow that the adoption judgment was voidable. We have shown that such contracts are voidable, and there is respectable authority to the effect that one agreeing to adoption may, under circumstances, rescind or revoke.

In the case In re White's Adoption, 300 Mich. 378, 1 N. W. (2d) 579, 581, reported in 138 A. L. R. 1034, the court held that the mother had the right to withdraw

consent to the adoption of her child, and that it was not necessary to show fraud or duress; that such right may be exercised "at any time within the period allowed by statute for a petition for rehearing." In this case the court doubted whether or not it was necessary for the mother to give reasons "beyond the mere fact she had changed her mind," since she had the right to rescind as long as the court had control over the matter for a rehearing.

The parent had joined in the declaration of adoption, which was confirmed, but within the time allowed for rehearing the mother withdrew her consent. We are not inclined to go to the length of saying that withdrawal may be arbitrary, but are convinced that where sufficient reason is shown there may be a revocation before final judgment, otherwise there would be no good reason for allowing an appeal, which might result in annulment, which opportunity was not vouchsafed the mother, who knew nothing of the proceedings.

The White case, supra, does not stand alone in stating the general principle. Cases cited in notes thereto manifest that the natural parent may revoke consent prior to the time legal adoption be consummated. In re Helms, 153 Wash. 242, 279 P. 748, is applicable here. State ex rel. Platzer v. Beardsley, 149 Minn. 435, 183 N. W. 965, is also fitting. There the mother, who had consented in writing to the adoption of her illegitimate child, appeared on the day of hearing and withdrew her consent, as appellant here, under the proof, undoubtedly would have done but for the fact that due to a misunderstanding, she had no actual notice. See also In re Cohen, 155 Misc. 202, 279 N. Y. S. 427; In re Anderson, 189 Minn. 85, 248 N. W. 657.

Contrary decisions may be noted, but there appeared extraneous reasons for denying revocation. In Wynees v. Crowley, 292 Mass. 461, 198 N. E. 758, the court found the consent to have been given voluntarily with a complete understanding of every fact necessary to a valid consent. In Graham v. Francis, 83 Colo. 346, 265 P. 690, right to revoke was denied because the mother had abandoned her child, thus obviating the necessity for consent.

We have no difficulty in concluding that the challenged consent is so permeated with doubt as to nullify its binding effect. We have little doubt but that the

804

mother was at least indirectly assured that before steps were taken she would have some sort of actual notice. Nor do we doubt had she been notified she would have objected to the adoption. Viewing the situation from all standpoints, we are convinced that appellant had the right to revoke. Her movement in the county court was tantamount to a withdrawal, and since the judgment was subject to appeal and had not become final the chancellor should have permitted her to revoke her questionable consent. We think she did everything in her power, or required of her to effectuate her expressed purpose.

Judgment reversed with directions to set aside the judgment of adoption.

The whole Court sitting.

Judge Tilford dissenting.