**David Lee PIERCE, Appellant,**

v.

**Dana Blake Redmon PIERCE et al.,
Appellees.**

Court of Appeals of Kentucky.

April 25, 1975.

Marion Rider, Frankfort, for appellant.

Liebman & Ryan, William L. Graham, Frankfort, for appellees.

JONES, Justice.

David Lee Pierce married Dana Blake Redmon on September 20, 1972. Dana was the mother of Michael, who was born out of wedlock. On September 29, 1972, David signed a petition to adopt Michael. The adoption petition was subsequently filed, and thereafter on November 3, 1972, a judgment of adoption was entered.

David returned from naval service on February 26, 1973. David and Dana sepa-

rated shortly thereafter. Dana instituted proceedings to dissolve the marriage. She sought custody and support of Michael. In an answer and counterclaim, David asserted that the judgment of adoption was void. Dana moved to strike the answer because the counterclaim constituted a collateral attack upon the judgment. Before the trial court ruled on the motion, David filed an independent action attacking the judgment of adoption.

The trial court consolidated the actions. In a clear and concise opinion, he regranted the adoption, effective retrospectively as of November 3, 1972. The marriage was dissolved. Dana was awarded custody of Michael. David was directed to pay Dana the sum of $30.00 per week for the support of Michael until he reached 18 years of age.

In this appeal, David contends that the trial court erred in regranting the adoption. The real issue presented is whether an adopting parent may have a judgment of adoption vacated by the court which entered the decree, and if so, under what circumstances.

This court will not be part or parcel of setting aside completed adoption proceedings by dissatisfied adopting parents. To do so would be at variance with the principle almost universally accepted by the great weight of authority.

It is unquestioned that the trial court had subject-matter jurisdiction when the original judgment of adoption was entered. All of David's outcries concerning defects in the statutory procedure are irrelevant because he was the initiating party in the adoption proceeding and has no legal right or standing to object that some other person, in this instance the child, was deprived of its statutory rights. The guardian ad litem seeks to uphold the judgment of adoption.

■ An adopting parent may have a judgment of adoption vacated by the court which entered the decree upon the ground of fraud practiced upon him in obtaining the decree, as where the adopting parent was of weak mind and was subjected to undue influence of the child's parent or other person in bringing about the child's adoption. See 2 Am Jur 2d, Adoption, Sec. 79, p. 925.

■ Courts have generally recognized or at least assumed that an adoption decree may be annulled at the instance of the adopting parent but indicate reluctance to disturb the status of an adopted child unless the vacating of the decree would clearly be for its best interest. 2 A.L.R.2d § 8, p. 903. From the cases collected in the annotation just cited, it appears to be generally held that an adoption decree will not be vacated or annulled at the instance of an adoptive parent where his motives are purely selfish, or because of pecuniary interest in changing his position. Courts should not allow abrogation of an adoption if it is premised on the desire of adoptive parents to rid themselves of a bad bargain, or because of a mere change in attitude or regret. 2 Am Jur 2d, Adoption, Sec. 79, p. 925. The Kentucky adoption statutes provide for annulment of a judgment of adoption only in the instance of subsequently discovered ethnic differences in the child that were unknown to the adopting parents.

David claims that he is entitled to an annulment of the judgment of adoption because of duress and undue influence practiced upon him by his wife, the natural mother of the child. The trial judge made no findings concerning this issue.

■ To warrant a finding of undue influence in inducing the adoption of a child, it must appear that the person exercising the influence so far dominated the will of the person upon whom it was exercised as to substitute his will for that of the latter, with the result that the action brought about was not, in reality, that of the person whose act it was in form, but rather, was that of the person exercising the influence. Phillips v. Chase, 203 Mass. 556,

89 N.E. 1049, error dismd. 216 U.S. 616, 30 S.Ct. 577, 54 L.Ed. 639.

▮▮ In our view David had the burden to demonstate by clear and convincing evidence the existence of undue influence. If this can be accomplished, it would clearly demonstrate that the annulment of the adoption judgment would be in the best interest of the infant child. The case is remanded with instructions to the trial court to make findings upon these questions which compose the real issue in the case.

The judgment is reversed for further proceedings consistent with this opinion.

The full court sitting.

REED, C. J., and CLAYTON, JONES, PALMORE and STERNBERG, JJ., concur.

LUKOWSKY, J., files a separate dissenting opinion, in which STEPHENSON, J., joins.

LUKOWSKY, Justice (dissenting).

It is with deep regret I find that I am unable to agree with the opinion of my brothers whom I so much respect. The ease with which they pass over the enforcement of the legislative mandate on the bridges of sympathy and equitable estoppel requires that I make public my views.

It is an elementary but guiding fact of legal history that adoption was unknown at common law and exists in this Commonwealth only by virtue of statutory enactment. 2 C.J.S. Adoption of Persons § 3; Commonwealth, Dept. of Child Welfare v. Lorenz, Ky., 407 S.W.2d 699. It is the relation of this principle to the facts of this case which necessitates the tedious discussion which follows.

Appellant David Lee Pierce appeals from a judgment holding that proceedings which he had instituted for the purpose of adopting Michael Douglas Redmon Pierce as his son were not void; that "* * * the adoption * * * should be granted;" and that David should support the child.

Michael was born out of wedlock on June 30, 1972, to Dana Blake Redmon, now Pierce. David and Dana were first together on August 4, 1972, when David was home on leave from the Navy; they were married on September 20, 1972. Nine days later, in a lawyer's office, David signed a petition to adopt Michael, naming Dana and Michael the respondents. The adoption action, No. A–83515, was filed on October 2, 1972, while David was at his naval base, and a judgment of adoption was entered on November 3, 1972. There is no indication in the record that David had any word concerning the adoption proceedings and he claims that nothing was said to him about it, except on January 5, 1973, Dana remarked "You now have a son." David did not list Michael with the Navy as a dependent, although he attempted to do so.

David returned home on February 26, 1973, after his discharge from the Navy; less than a month later he and Dana separated. On March 26, 1973, Dana instituted proceedings, No. 83968, to obtain a dissolution of the marriage and custody of and support for Michael. David filed an answer and counterclaim in which he asserted that the judgment of adoption was void and that he was not under any obligation to support Michael. Dana moved to strike the answer for the reasons that the counterclaim constituted a collateral attack on the judgment and David was estopped to question the validity of the adoption judgment as he was the petitioner. Before the trial court had ruled on the motion, David filed an independent action, No. 84117, attacking the judgment of adoption. On June 13, 1973, the trial court ordered that the allegations of the counterclaim in action 83968 attacking the adoption judgment be stricken, and on October 3, 1973, it ordered the adoption proceedings redocketed. David protested and moved that those pro-

ceedings be dismissed. After various steps had been taken in the litigation, including the appointment of a guardian ad litem for Michael, the court ordered that civil actions 83968 and 84117 be " * * * consolidated * * * for all purposes * * * ." Later action A–83515 was consolidated with the other two cases, and a final judgment was entered on February 6, 1974. It adjudicated that the original judgment of adoption, having been redocketed, would be effective as of November 3, 1972, and that as of that date Michael had become the adopted son of David. It also directed David to pay to Dana $30.00 per week for the support of Michael until Michael reached 18 years of age.

Appellant argues that the original judgment of adoption was void and that the trial court was powerless to enter a nunc pro tunc judgment of adoption. Appellees respond that the child was legally adopted without the nunc pro tunc judgment; that the entry of that judgment was a precautionary measure, and that appellant is estopped " * * * to attack a decree entered in an action which he instituted."

Strict compliance with the statutes pertaining to adoptions is required. Higgason v. Henry, Ky., 313 S.W.2d 275 (1958). KRS 199.480(2) provides, in pertinent part, that "Each party defendant shall be brought before the court in the same manner as provided in other civil cases * * * ." CR 4.04(3) relates how unmarried infants are to be served with process. No summons was issued for either of the two respondents, Dana or her child. Dana says that serving her with a summons was unnecessary because she signed the petition and swore that its allegations were true. She claims that issuing a summons for serving it on Michael was useless. David cites Smith v. Canada, Ky., 290 S.W.2d 463 (1956), in which we wrote, " * * * where infants under fourteen years of age were not summoned in the manner prescribed by the above provisions a judgment against them, directing a sale of their land,

is void." Almost one year after the original judgment of adoption was entered, the court ordered the clerk " * * * to issue two summons for the infant defendant, one to be served * * * upon * * * the mother * * * and one to be served upon * * * Guardian ad Litem for the infant defendant." These summonses were served as directed in that order. The guardian ad litem was not appointed until October 3, 1973.

KRS 199.500(1) states, "No adoption shall be granted without the sworn consent of * * * the mother of the child born out of wedlock * * * ." No "sworn consent" was ever filed, unless by verifying under oath the petition for adoption Dana complied with this statute. That petition did not allege that Dana had consented, although it is obvious that her consent was extant. We held in Higgason v. Henry, supra, that " * * * the consent * * * was not given under oath * * * " and " * * * in the absence of sworn consent, the judgment granting adoption is erroneous and must be reversed." In Hill v. Poole, Ky., 493 S.W.2d 482 (1973), we concluded that testimony by the father under oath that he had executed an unfiled written consent (apparently not sworn to) did not cure the failure to comply with KRS 199.500, and we reiterated the strict statutory compliance rule announced in *Higgason.*

The clerk of the court was required by KRS 199.510 to forward two copies of the petition for adoption, when filed, to the Department of Child Welfare; whereupon, the department was required to investigate various matters and report to the court. There was no compliance with this statute. However, we approved a judgment of adoption in Keeling v. Minton, Ky., 339 S.W.2d 464 (1960), even though the department had not reported, but the trial court used " * * * a hearing as his method of investigation." No investigative hearing was conducted in the case before us.

KRS 199.515 provides:

"After the report of the guardian ad litem, * * * and the report required by KRS 199.510 have been filed, the court at any time on motion of its own or that of any interested party may set a time for a hearing on the petition to be conducted in chambers in privacy, except as hereinafter provided. Notice of the hearing shall be given to all necessary parties at least ten (10) days in advance thereof, unless such parties shall have answered and agreed to the adoption or have failed to answer and the time for answering has expired, or shall have waived notice of the hearing. All necessary parties may be present and at least one (1) of the adopting parents and the guardian ad litem, if any, for the child must be present at the hearing."

A hearing with the adopting parent present was necesssary. Dickey v. Boxley, Ky., 481 S.W.2d 283 (1972). It never occurred.

Before an effort was made to correct the omissions and failures and long before the entry of the nunc pro tunc judgment, David attempted to discontinue the efforts he had originated to adopt the child and he militantly sought to have the original judgment vacated and the proceedings dismissed. We have held in such cases as Hill v. Poole, supra, that a parent could withdraw consent to adoption at any time before final judgment upon a showing of sufficient reason. Also see Skaggs v. Gannon, 293 Ky. 795, 170 S.W.2d 12 (1943). In Greene v. Fitzpatrick, 220 Ky. 590, 295 S.W. 896 (1927), we concluded that a judgment granting adoption could be set aside when there was fraud in obtaining it. A decree of adoption may be vacated under appropriate circumstances. Hood v. Nichol, 236 Ky. 779, 34 S.W.2d 429 (1931); 2 C.J.S. Adoption of Persons § 113, p. 545. In Barber v. Barber, 280 Ky. 842, 134 S.W.2d 933 (1939), we affirmed a judgment vacating an adoption completed several months before it was attacked.

The legislature has countenanced actions such as David's so long as they are taken within two years of the entry of judgment. KRS 199.540(2).

KRS 199.520(2) states:

"From and after the date of the judgment the child shall be deemed the child of petitioners and shall be considered for purposes of inheritance and succession and for all other legal considerations the natural, legitimate child of the parents adopting it the same as if born of their bodies. * * *."

We have said many times that the welfare of the child is the paramount consideration. There is no evidence in the record indicating that the parental status which David and Michael would hold would be in the best interest of the infant. The majority would infer that it was for Michael's best interest from the ordered support payments, ignoring that by so doing, they make the infant the child of a broken home, or place on David the onerous burden of proving a negative.

Among other things, KRS 199.520(1) provides:

"After hearing the case the court shall enter a judgment of adoption, if it finds that the facts stated in the petition were established; that all legal requirements, including jurisdiction, relating to the adoption have been complied with; that the petitioners are of good moral character of reputable standing in the community and of ability to properly maintain and educate the child, and that the best interest of the child will be promoted by the adoption and that the child is suitable for adoption. * * *."

Under the rule that the adoption statutes must be strictly complied with, I would hold that the original adoption judgment was void when it was entered on November 3, 1972.

We wrote in Chester v. Graves, 159 Ky. 244, 166 S.W. 988, Ann.Cas.1915D, 678 (1914):

"If the court has not rendered a judgment that it might or should have rendered, or if it has rendered an imperfect or improper judgment, it has no power to remedy these errors or omissions by ordering the entry nunc pro tunc of a proper judgment * * *."

With all of the gross irregularities and failures to comply with the statutes, the entry of the nunc pro tunc judgment was erroneous. It was also erroneous for the trial court to attempt to complete the adoption application in the face of militant efforts by the petitioner to abandon the proceedings and to set aside the judgment originally entered.

The guardian ad litem argues that David is estopped to attack the judgment of adoption because David instituted the suit. No Kentucky case is cited in support of that contention, but reliance is placed on 2 Am. Jur.2d, Adoption, Sec. 74, p. 921. The general rule in this state is that a person procuring a judgment is estopped to attack it. See such cases as Acker v. Henry Clay Oil Co., 196 Ky. 508, 245 S.W. 6 (1922), and Hopkins v. Jones, 193 Ky. 281, 235 S.W. 754 (1921). The Am.Jur.2d reference relates to cases in which the circumstances were quite different from those which exist in the matter now before us. Because of the rule requiring strict adherence to adoption statutes and the many failures to comply therewith, I would hold that the rule of estoppel should not prevail in the circumstances of this case and that the rationale expressed in Hill v. Poole, supra, which authorizes the withdrawal of parental consent before final judgment, should apply. Cf. Warner v. Ward, Ky., 401 S. W.2d 62 (1966).

We should not give our imprimatur to the flagrant disregard by counsel and the trial court of almost every requirement set by the legislature in regard to adoptions in Chapter 199 of the Kentucky Revised Statutes. The judgment entered February 6, 1974, should be reversed for further proceedings consistent herewith.

STEPHENSON, J., joins in this dissent.