OPINION OF THE COURT
Philip C. Segal, J.
The present petition by the adoptive father of an eight-year-old child seeks to vacate an order of adoption on the basis of fraud and/or misrepresentation (see, Domestic Relations Law §§ 114, 115-b [7]) almost four years after the order was made and during the pendency of a contested matrimonial action between the adoptive father and the child’s mother (the respondent herein). The alleged basis for the requested relief is that the mother misrepresented the identity of the child’s father (the child was born out of wedlock) to the court in the prior adoption proceeding and to the adoptive father.
As set forth below, this petition apparently is made solely to gain advantage in the parties’ current matrimonial action and is without merit. No fraud was ever perpetrated on the court. Moreover, regardless of any representations the mother may have made to the adoptive father regarding paternity, he is not entitled to the relief he seeks as a matter of law.
i.
The child at issue, Kevin G., was born on June 15, 1986. Almost two years later, petitioner and respondent met and subsequently married on June 10, 1989. Thereafter, petitioner determined to adopt Kevin. Thus, several months after the parties’ marriage, an adoption proceeding was filed in Family Court and, on November 9, 1990, petitioner’s adoption of Kevin was granted.
In the adoption petition and supporting affidavits, respondent was not required to identify, and did not identify, Kevin’s putative father. However, she did allege: that the putative father had abandoned Kevin; that his consent to the adoption, therefore, was not required (Domestic Relations Law § 111 [2] [a]); and that the putative father’s failure ever to claim *851 paternity and his lack of contact with Kevin and respondent precluded the need even to serve notice of the proposed adoption on him (Domestic Relations Law § 111-a; see, Matter of Robert O. v Russell K, 80 NY2d 254 [1992]). In addition, during the court-ordered Department of Probation investigation (see, Domestic Relations Law § 116), respondent discussed Kevin’s paternity with the investigating probation officer, but ultimately confirmed that she simply did not know the identity of the putative father.
With regard to representations made to petitioner, the parties agree that at all times prior to Kevin’s adoption respondent also told petitioner that the putative father’s identity was unknown. Indeed, there is no claim that any contrary representations were made until after the parties’ present matrimonial action was commenced in August 1992 when, according to petitioner, respondent told him for the first time that Kevin’s father was an individual known to petitioner and with whom he worked at the New York City Police Department. Although respondent denies that she ever made that statement, petitioner nonetheless contends that both he and the court were defrauded and that Kevin’s adoption should now be vacated. For the following reasons, the petition is dismissed.
ii.
Petitioner’s contention that the order of adoption should be vacated because respondent "concealed” the identity of Kevin’s putative father from the Family Court is rejected. Absent circumstances not present here in which a putative father is entitled to notice of a proposed adoption, there is no obligation under New York law to admit or disclose his identity to the adoption court. (Matter of Jessica XX., 54 NY2d 417 [1981], affd sub nom. Lehr v Robertson, 463 US 248 [1983].) Moreover, petitioner has not demonstrated that respondent made any material misrepresentations during the Department of Probation investigation on the issue of paternity or on any other matter pertaining to the welfare of the child. As such, petitioner’s claim that the Family Court was "indue[ed] * * * to grant the adoption predicated upon the mother’s fraud” and that, as a result, the "adoption order is not in the best interests of the child” necessarily must fail.
Alternatively, petitioner asserts that he was induced to adopt Kevin on the basis of respondent’s representations to *852 him that the identity of the putative father was unknown and that he never would have petitioned for, or otherwise agreed to, the adoption had "the truth” been known. As such, petitioner seeks to revoke his agreement and consent to adopt Kevin nunc pro tune.
Although Domestic Relations Law §§ 114, 115-b (7) might permit the vacatur of an adoption on the basis of such misrepresentations, a claim seeking that relief could only be considered if asserted promptly after the adoption was granted and before any significant parent-child relationship had an opportunity to develop. Here, the issue was not raised until almost four years after the adoption was granted and, only then, in the midst of a contested matrimonial action. Petitioner’s failure to consider timely whether the identity of Kevin’s father had any bearing on his willingness to adopt the child now precludes the present claim as a matter of law. (Cf., Matter of Robert O. v Russell K., supra, 80 NY2d, at 264-265.) Thus, without regard to any representations respondent may have made to petitioner, the passage of time now prevents their consideration. This result is compelled by the State’s "legitimate concern for * * * and * * * the 'vital importance’ of * * * adoption procedures possessed of 'promptness and finality’ * * * [and] the best interests of the child”. (80 NY2d, at 264, supra [quoting Lehr v Robertson, supra, at 263-266, n 25]; cf, Matter of Ettore I. v Angela D., 127 AD2d 6 [2d Dept 1987].)
Finally, the timing and circumstances of this petition compel the inescapable conclusion that it was filed solely to avoid the payment of child support or to gain some other advantage in the parties’ pending matrimonial action. This factor also militates against the relief petitioner seeks. (See, Pierce v Pierce, 522 SW2d 435 [Ky Ct App 1975].)
In view of the foregoing, an order of dismissal shall enter forthwith.