## Staunton

NANCY LOUISE JANETOS HARMON, AN INFANT WHO SUES &C. V. JOSEPH M. D'ADAMO AND HEDWIG ROSA D'ADAMO.

WALTER JEROME HARMON V. JOSEPH M. D'ADAMO AND HEDWIG ROSA D'ADAMO.

September 10, 1953.

Record Nos. 4137, 4138

Present, All the Justices.

126

The opinion states the case.

*George D. Bowles, Lyne & Bowles, Leith S. Bremner, Robert Lewis Young* and *Bremner & Young*, for appellant, Nancy Louise Janetos Harmon.

*George D. Bowles, Lyne & Bowles, Leith S. Bremner, Robert Lewis Young* and *Bremner & Young*, for petitioner, Walter Jerome Harmon.

*Thomas C. Crouch, Jr.*, for appellees, Joseph M. D'Adamo and Hedwig Rosa D'Adamo.

*Thomas C. Crouch, Jr.*, for respondents, Joseph M. D'Adamo and Hedwig Rosa D'Adamo.

SMITH, J., delivered the opinion of the court.

These two proceedings, an appeal from a decree of the Circuit Court of Henrico county and an original petition for a writ of *habeas corpus ad subjiciendum*, were heard here together. Both cases have as their object to obtain custody of an infant female child known as Baby Girl Janetos, born on April 6, 1951, to appellant Nancy Louise Janetos.

Nancy, then eighteen years of age and unmarried, entered a Richmond hospital to give birth to her child and registered under the name of Mrs. Walter J. Harmon. Harmon, a nineteen year old youth generally known as Jerry,

was Nancy's sweetheart and the natural father of her child. Four days after the baby was born and while Nancy was in the hospital a local attorney, whom Nancy had previously consulted in connection with her predicament, presented to her a written authorization for the removal of the baby, and a petition for adoption by Joseph M. D'Adamo and Hedwig Rosa D'Adamo, his wife. Nancy promptly signed the authorization permitting the attorney to remove the baby and after delaying finally signed the petition for adoption, thus signifying her consent thereto. The baby was removed from the hospital and delivered to the D'Adamo home where she has remained to the present time.

A few days later Mr. and Mrs. D'Adamo filed in the Circuit Court of Henrico their petition for the adoption of Nancy's baby; and on September 19, 1951, that court entered an interlocutory order declaring "that from the date of the final order of adoption in this case, if such final order be afterwards entered, the said child, to all legal intents and purposes, will be the child of the said Petitioners." However, the final order of adoption as contemplated by Code, § 63-356 has never been entered. Three days after the entry of the interlocutory order Nancy and Jerry Harmon were married.

On January 12, 1952, Nancy, by her mother as next friend, filed her petition pursuant to Code, § 63-353 to have the interlocutory order vacated and annulled and Baby Girl Janetos returned to her. Jerry Harmon attempted to join in the prayer of this petition by affixing his signature at the bottom thereof, but this act was without any legal significance because the record before us in the adoption proceeding does not show that he had any interest in the proceeding and furthermore he was an infant. The trial court on October 9, 1952, entered a decree affirming its interlocutory order and dismissing Nancy's petition. To this decree we awarded Nancy an appeal.

In the meantime Jerry presented his petition to this court for a writ of *habeas corpus ad subjiciendum* wherein he

prayed that Baby Girl Janetos be released from the unlawful restraint of the D'Adamos and delivered to him. In this petition he set out the fact of his marriage to Nancy and formally recognized the baby as his own daughter and stated he had never given his consent to the child's adoption. An answer was filed, depositions were taken, and exhibits were filed, but it will be unnecessary to discuss the *habeas corpus* proceeding in detail because of our decision in the adoption proceeding.

It is unfortunate that because of Nancy's failure to comply with the Rules of Court none of the evidence introduced in the adoption proceeding is properly before this court and the only facts available to us in that case are those which are apparent from the face of the record on appeal. However, the petition filed in the *habeas corpus* proceeding and the admissions of counsel before this court supply ample evidence to support the one factual conclusion controlling the disposition of this case. The decisive fact is that Jerry has recognized Baby Girl Janetos to be his own child.

Under the rule at common law the subsequent marriage of the parents did not render a bastard legitimate. *Hoover v. Hoover*, 131 Va. 522, 105 S. E. 91, 109 S. E. 424. However, this rule has been modified in Virginia by statute, Code, § 64-6. Under this statute, if the marriage of the parents is entered into in accordance with the forms and ceremonies of the law, and the child is recognized by his father, either before or after the marriage, the child is deemed legitimate. *Goodman v. Goodman*, 150 Va. 42, 142 S. E. 412. The word "recognized," as used in § 64-6 means that the father should have acknowledged, accepted, admitted or owned the child as his. *Hoover v. Hoover, supra.* The legitimation of a child puts the child on a par with children born in lawful wedlock and all the reciprocal responsibilities and duties between a father and a legitimate child obtain between him and his legitimated child. *Henderson v. Henderson*, 187 Va. 121, 46 S. E. (2d) 10; 7 Am. Jur. 667, Bastards, § 59.

Legal adoption exists only by statute, there having been no such thing at common law. *Shepherd* v. *Sovereign Camp*, 166 Va. 488, 186 S. E. 113. Under our statute an order in an adoption proceeding cannot be treated as a finality when such proceeding has stopped short of a final decree.

The trial court, however, is now without authority to enter the final decree contemplated by § 63-356 which would complete the adoption procedure, because the written consent of both parents of Baby Girl Janetos required by Code, § 63-351 has not been given.

It was argued that since Jerry was not married to Nancy at the time she gave her consent to the adoption of the child no act on his part can operate retroactively to require his joining in the consent given by the unmarried natural mother of the child. However, this contention ignores the mandatory provisions of Code, § 63-351 which provides that "No petition for adoption shall be granted by the court unless there be written consent thereto, signed and acknowledged * * * by both parents if they are both living, * * * ."

As we said in *Bidwell* v. *McSorley*, 194 Va. 135, 72 S. E. (2d) 245, the purpose of the interlocutory order contemplated by Code, § 63-352 is to provide an opportunity for the investigation of the adopting parents to see if the child is being properly cared for. Code, § 63-353 permits the court to take into consideration matters brought to light during the pendency of the order, and if good cause is shown why the adoption should not be consummated, then the interlocutory order may be vacated. A "good cause" was said to be a " 'Legally sufficient ground or reason.' " The fact that during the pendency of the interlocutory order Jerry Harmon has become one of the legal parents of Baby Girl Janetos and has not given his consent to the adoption of the child, is clearly a "legally sufficient ground" under our law for vacating the interlocutory order.

Accordingly, the decree of the trial court in the adoption proceeding is hereby reversed and that case is remanded with directions to the trial court to revoke its interlocutory order of September 19, 1951, and award the custody of Baby Girl Janetos to Jerry and Nancy Harmon.

The petition in this court for a writ of *habeas corpus* is dismissed.

*Reversed and remanded and petition dismissed.*