SAMUEL SKLAROFF *et al. vs.* CATHERINE STEVENS.

FEBRUARY 14, 1956 (as of JANUARY 17, 1956).

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This petition for the adoption of James Michael Stevens, respondent's infant son, was commenced in the juvenile court under the provisions of general laws 1938, chapter 420, §1, as amended by public laws 1944, chap. 1441, sec. 36. Following a hearing in that court the peti-

tion was denied and dismissed. From a decree entered in accordance with that decision Samuel Sklaroff and his wife Anna appealed to the superior court, where a jury returned a verdict in their favor. The motion of the respondent Catherine Stevens for a new trial was later heard and denied. The case is before us on her exception to the denial of that motion and on various other exceptions to rulings during the trial, the most important of which is the one to the denial of her motion to dismiss the petition for want of jurisdiction. Hereinafter we will sometimes refer to the Sklaroffs as the petitioners and to Catherine Stevens as the respondent, or Catherine, or by her present married name of Catherine Skeadas.

Upon a close examination of the record before us we are convinced that the trial justice was clearly wrong in denying respondent's above-mentioned motion to dismiss, which fundamentally rested on the absence of the consent necessary for the adoption of a child under the laws of this state. The evidence in support of that motion is undisputed, unimpeached and conclusive. In such a situation it is sufficient for our purposes to state only the controlling facts concerning the motion to dismiss. We therefore intentionally omit, as far as possible, reference to all of the remaining and extensive evidence, particularly that of two intermediaries residing in Massachusetts whose testimony is not free from suspicion, coercive inducement, or other questionable conduct.

The Sklaroffs are domiciled residents of Providence in this state. Catherine Stevens, an unmarried woman, had her domicile and residence in Lynn, Massachusetts, where on September 22, 1951 she gave birth to James Michael Stevens. The putative father was James Skeadas. On September 25, or three days after the baby was born, Catherine, apparently with considerable reluctance, as she had theretofore been urging Skeadas to marry her, signed a paper in the presence of a Lynn attorney consenting to the adoption

of her child by certain indefinitely described persons. It is unnecessary to relate how this attorney came to contact Catherine and what he did in conjunction with another attorney of Boston, Massachusetts, in placing the child with the Sklaroffs. However, we deem it proper to observe at this point the Sklaroffs are respectable people, that they have acted in entire good faith in the matter of the adoption, and that according to the uncontradicted evidence they have always taken proper care of the child.

Soon after the child had been turned over to the Lynn attorney in Massachusetts, Catherine, and also Skeadas, underwent a revulsion of feeling respecting what they had done. A more considered decision took the place of impulsive conduct. For some time thereafter they negotiated with the Lynn attorney, and through him with the attorney in Boston, for the return of the child to Catherine. These efforts proved unsuccessful because certain substantial financial demands, which apparently they could not meet, were insisted upon as necessary to obtain the return of the child.

The petition for adoption in the instant case was filed in the juvenile court of this state on April 8, 1952, at or about which date Catherine first learned of the whereabouts of her child. Ever since that time she has contested the petition on the ground that her alleged consent to the adoption by the Sklaroffs or anyone else was not her free act and deed. As already indicated, the Sklaroffs appealed from a decree of the juvenile court denying and dismissing the petition and brought the case to the superior court. The citation as ordered by that court, which Catherine duly answered, was returnable April 4, 1953. Following certain collateral proceedings, the case came on for trial on March 23, 1954 and ended on April 2, 1954.

We now come to a matter that is of basic importance in passing on respondent's motion to dismiss the case for want of jurisdiction. Between the time of the hearing and denial of the petition in the juvenile court and the trial

in the superior court Skeadas married Catherine. A certified copy from the record of marriages of the city of Lynn, Massachusetts, which is in evidence as respondent's exhibit B, shows that James Skeadas and Catherine E. Stevens were married in that city on May 1, 1953. It also appears from uncontradicted evidence that three days after the marriage Skeadas and Catherine, acting under the general laws of Massachusetts, 1-A Mass. Anno. Laws, chap. 46, §13, went to the city clerk in Lynn and had the name of the child changed from James Michael Stevens to James Michael Skeadas. At the trial in the superior court Skeadas, as the then father of the child both in fact and in law, strongly objected to the granting of the petition. He had never signed any written consent to such adoption. There is also independent evidence to the effect that James and Catherine Skeadas have another child, Dennis George Skeadas, and that they maintain a clean and comfortable home in a good neighborhood.

The adoption of children was unknown to the common law in England. It came into the laws of this state solely by virtue of statute. *Greene* v. *Willis,* 47 R. I. 251, 254; *Union Trust Co.* v. *Campi,* 51 R. I. 76, 81. Since such a statute is in derogation of the common law it is generally held that, at least as to all directions pertaining to manifest essentials, its provisions must be strictly construed and literally applied. See *Batcheller-Durkee* v. *Batcheller,* 39 R. I. 45.

A principal objective of the pertinent statutes of Massachusetts and Rhode Island is to protect a child born out of wedlock against adoption under improper conditions, to help him acquire by operation of law the status of a child born in lawful wedlock, and in so far as practicable to expunge from the birth records of the place where he was born any reference to illegitimacy. To that end the general laws of Massachusetts, 1-A Mass. Anno. Laws, chap. 46, §13, hereinbefore mentioned, provides: "If a person shall have

acquired the status of a legitimate child by the intermarriage of his parents and the acknowledgment of his father," the record of his birth shall be amended or supplemented so as to read in all respects "as if such person had been reported for record as born to such parents in lawful wedlock." That section further provides that a copy of such record shall certify to the facts as amended and shall not indicate "that the record has been corrected, amended or supplemented."

The comparable provisions of our statute are substantially the same. General laws 1938, chap. 424, §13, as amended by P. L. 1944, chap. 1394, reads as follows: "Illegitimate children shall become legitimatized by the subsequent marriage of their parents to each other, and the issue of marriages declared null in law shall nevertheless be legitimate, and in such case the city or town clerk having custody of the birth records at the request of either parent, or the child so legitimatized, shall make any changes necessary in order to remove from said records any evidence of illegitimacy."

The indisputable evidence in the instant case clearly establishes that Catherine's illegitimate child was legitimatized by the subsequent marriage of the parents, the acknowledgment of paternity by the father, and the express action of the parents in amending the birth records in accordance with the law of Massachusetts, where at all times the child's domicile remained. Such action to legitimatize the child is also in accordance with the law of Rhode Island, where the child is presently in the custody of the Sklaroffs. At the time of the trial in the superior court it conclusively appeared that the illegitimate child of Catherine Stevens had become, by act of the parents in compliance with law, the *legitimate* child of James and Catherine Skeadas. Such fundamental change in the status of the child is of vital importance in this case.

Since the present proceedings for adoption were instituted in this state, the procedure to be followed in order

to give our courts jurisdiction in the matter must be in strict accordance with the requirements of the pertinent statute. A petition for leave to adopt a child is governed by G. L. 1938, chap. 420. Section 2 of that chapter provides: "The parents of the child, or the survivor of them, shall * * * consent in writing to such adoption, or such petition shall be dismissed." This provision of §2 requires no interpretation. In clear and positive language it commands that a petition for adoption shall be dismissed unless both parents, if living, shall have given their consent in writing to the adoption.

In the case at bar, assuming that Catherine, the child's mother, at the time she was not married to Skeadas did sign a paper consenting to the adoption of her newly-born son and that her consent thereto was entirely voluntary, as petitioners contend, yet when the petition for adoption came on for final adjudication on the merits by the superior court such petition was inadequate to give jurisdiction in the matter to that court because of noncompliance with the express mandate of the statute. The marriage of Catherine to James Skeadas, the subsequent acknowledgment by the latter that he was the child's father, and their express action to legitimatize the child according to the statute in Massachusetts resulted in completely changing the status of the child to that of legitimacy for all present purposes. Consequently it required the consent in writing by the father as well as the mother to the adoption before a petition for that purpose could be entertained by the court. From the undisputed evidence in the present record it clearly appears that the father not only did not consent in writing to the adoption, as required by statute, but also that, joining with his wife who contended that her consent was involuntary and under conditions akin to duress, he firmly opposed the granting of the petition.

Although one may sympathize with the Sklaroffs for the hardship resulting to them, nevertheless it is our judg-

ment that in the peculiar circumstances of record the trial justice erred in denying respondent's motion to dismiss the proceedings for want of jurisdiction. In allowing the case to go to the jury without the petition for adoption having been voluntarily consented to in writing by *both parents,* as the statute requires, and especially in the face of the father's opposition under oath, the trial justice ignored the basic mandatory requirements of the statute as to the adoption of the child who was then legitimatized under the law.

For the reasons stated, the respondent's exception to the denial of her motion to dismiss the petition for adoption is sustained, and the case is remitted to the superior court with direction to grant said motion to dismiss for want of jurisdiction and thereupon to transmit the case to the juvenile court for entry of a decree in accordance with this opinion.

## ON MOTION FOR REARGUMENT.

### MARCH 2, 1956.

PER CURIAM. After the opinion in the above-entitled case was filed the petitioners requested and received permission to file a motion for reargument. It sets forth at some length the reasons for their contention that the case should be reargued before the court as presently constituted.

The unanimous decision of the court in this case was actually entered in the clerk's office on January 17, 1956 at 11 a.m. Subsequently the opinion, which merely sets forth the reasons for that decision, was filed on February 14 as of January 17, 1956. Meanwhile, however, three new justices had been elected and qualified to fill the vacancies caused by the resignations of three of the five justices who had participated in such decision. Apparently the attorneys for the petitioners recognize these facts, which are matters of record.

It is well settled that a motion to reargue is not filed as of right but is addressed to our discretion. Nevertheless,

in the special circumstances referred to, the court as presently constituted has granted permission to petitioners to file the motion and accordingly has examined the reasons recited therein, the decision entered January 17, 1956, and the explanatory opinion which was later filed as of that date.

After consideration we are unanimously of the opinion that a considerable part of the motion for reargument deals with certain evidence and issues which are not material to the basis of our decision; that the motion does not point out wherein such decision, as explained by the opinion, misconceived or misapplied the law of this state governing adoption, general laws 1938, chapter 420, §2; that such motion does not point out any pertinent question of law or material argument which the court overlooked or failed to consider in reaching the decision which was entered January 17, 1956; and that none of the reasons relied on warrants a reargument of or a change in that decision.

It is unnecessary to repeat that such decision was based on a question of law as to the superior court's want of jurisdiction under the pertinent statute; that the unequivocal provisions of such statute mandatorily require the voluntary consent in writing of *both* parents of a child before a court has jurisdiction thereunder to decree a final adoption; that *before* the hearing in the superior court the mother and father of the child had legally married and had expressly acknowledged and legitimatized the child according to law; and that the written consent of the father to the petition for adoption never was given.

In the undisputed circumstances of record the child was legitimate at the time of the trial. Accordingly the superior court did not have jurisdiction under the statute to proceed, without the consent of both parents, to adjudicate and decree a final adoption of the child. We therefore held that it was error for such court to deny the timely motion of

the respondent to dismiss the petition on that ground. We now reaffirm such decision.

The motion is denied.

### ON APPLICATION FOR STAY OF FINAL JUDGMENT.

#### MARCH 2, 1956.

PER CURIAM. This is an application, pursuant to the provisions of Title 28, United States Code Annotated, §2101 (f), for a stay of final judgment in the above-entitled case. It was presented for our consideration in the event that the motion of the petitioners for a reargument should be denied.

Since we have denied such motion in our opinion filed this day in Samuel Sklaroff et al. v. Catherine Stevens, Ex. No. 9557, we shall consider the petitioners' request for a stay of final judgment as prayed for in the instant application. The section of the United States Code relied on, Tit. 28, U.S.C.A., §2101 (f), begins and reads in part as follows: "In any case in which the final judgment or decree of any court *is subject to review by the Supreme Court* on writ of certiorari, the execution and enforcement of such judgment or decree may be stayed for a reasonable time to enable the party aggrieved to obtain a writ of certiorari from the Supreme Court." (italics ours)

No question involving an alleged violation of the rights of the petitioners under the United States constitution was raised by them on the record either at the trial in the superior court or on review in this court. In our judgment no question even remotely related thereto can reasonably be raised in connection with our decision entered January 17, 1956, which was explained by the opinion filed February 14 as of January 17, 1956.

Certainly the petitioners acquired no constitutionally vested rights as to the child merely because they filed a petition for adoption, which incidentally was denied in the first instance by the juvenile court for want of the voluntary

consent of the mother. The matter of adoption is wholly statutory. At the time the instant petition was filed and tried it was governed by general laws 1938, chapter 420. The provisions of §2 of that statute mandatorily required the voluntary and written consent of *both* parents before a court could properly enter a decree of final adoption.

It is undisputed that *before* the trial in the superior court the mother and father of the child had legally married in Massachusetts where both were domiciled residents; that they also, under a specific statute of that state, had acknowledged and legitimatized the child and changed his name; that such statute is essentially the same as the law of Rhode Island, G. L. 1938, chap. 424, §13, as amended by public laws 1944, chap. 1394; and that the father of the child had never signed a written consent to the petition for adoption. It further appeared that he never was made a party respondent to the petition and that he testified under oath in the superior court and strongly objected to the granting of such petition.

Therefore on the undisputed record the child was legitimate at the time of the trial and both parents had not consented to the petition. Without the consent of both parents, the superior court had no jurisdiction to proceed to adjudicate the petition and to enter a decree of final adoption of such child, especially in view of respondent's timely motion to dismiss the petition for want of jurisdiction.

Having in mind the undisputed facts of record and the jurisdictional basis of our decision under this state's controlling statute as to adoption, the claim of petitioners to a vested right in the child is without any foundation. Nor can they, who had a full hearing and review, properly claim any deprivation of due process of law. In our opinion no possible question under the federal constitution which would be reviewable by the United States Supreme Court on certiorari can reasonably be raised on this record. As we view

Title 28, United States Code Annotated, §2101 (f), above quoted, it is necessary for the petitioners to show that they are aggrieved by the violation of a right under the United States constitution in order to bring themselves within the express language and purpose thereof.

We are of the opinion, therefore, that in the absence of any such showing in the record the petitioners' application for a stay of final judgment as prayed for should be and it is hereby denied.

*Newton & Brodsky, Irving Brodsky,* for petitioners.

*Timothy J. McCarthy, Leo J. Sullivan,* for respondent.